IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | ) |
| | ) Case No. 08-10289 (BLS) |
| CHARYS HOLDING COMPANY, INC. and | ) |
| CROCHET & BOREL SERVICES, INC., | ) Chapter 11 |
| | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| _____ | ) |
| CHARYS LIQUIDATING TRUST and | ) |
| C&B LIQUIDATING TRUST, | ) Adv. Pro. No. 10-50211 (BLS) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| HADES ADVISORS, LLC, | ) |
| | ) |
| Defendant. | ) |
| _____ | )   Re: Docket No. 6 |

Frederick B. Rosner           Michael G. Busenkell
Scott J. Leonhardt           WOMBLE, CARLYLE
MESSANA ROSNER & STERN LLP   SANDRIDGE & RICE, PLLC
1000 N. West Street           222 Delaware Avenue
Suite 1200                    Suite 1501
Wilmington, DE 19801          Wilmington, DE 19801

*Counsel for Defendant*      Philip J. Mohr
*Hades Advisors, LLC*        WOMBLE, CARLYLE
                             SANDRIDGE & RICE, PLLC
                             One West Fourth Street
                             Winston-Salem, NC 27101

                             *Counsel for Plaintiffs Charys*
                             *Liquidating Trust and*
                             *C&B Liquidating Trust*

OPINION[1]

Before the Court is a motion to dismiss (the "Motion")
[Docket No.6] brought by Hades Advisors, LLC ("Hades" or
"Defendant") seeking dismissal of the First Amended Complaint
(the "Complaint") [Docket No. 9] filed by Charys Liquidating
Trust and C&B Liquidating Trust (together, the "Trusts" or
"Plaintiffs").  The Complaint asserts four counts.  Count I
seeks avoidance and recovery of transferred monies on a
preferential payment theory pursuant to sections 547 and 550 of
the Bankruptcy Code.  Counts II and III seek avoidance of
transferred monies on constructive fraudulent transfer theories
pursuant to sections 548(a)(1)(B) and 544 of the Bankruptcy
Code.  Count IV seeks recovery of the to-be avoided constructive
fraudulent transfers pursuant to section 550 of the Bankruptcy
Code.  By the Motion, Defendant seeks dismissal of the Complaint
for failure to state a claim upon which relief can be granted.
For the following reasons, the Court will grant in part, and
deny in part, the Motion.

## BACKGROUND

In November, 2007, prior to its chapter 11 filing, Charys
Holding Company, Inc. ("Charys") was unable to make an interest

---

[1]    "The court is not required to state findings or conclusions
when ruling on a motion under Rule 12 . . . ." Fed. R. Bankr. P.
7052(a)(3). Accordingly, the Court herein makes no findings of
fact and conclusions of law pursuant to Rule 7052 of the Federal
Rules of Bankruptcy Procedure.

payment on certain outstanding debt obligations.  (Compl. ¶ 12).
Thereafter, Charys began restructuring negotiations with an
informal group of its noteholders (the "Ad Hoc Committee").
(Id. at ¶ 13).  As a result of these discussions, Charys's board
of directors agreed to institute certain changes in an effort to
improve Charys's profitability and sustainability, including the
replacement of Charys's Chief Executive Officer, Billy V. Ray
("Ray").  (Id. at ¶ 14).

Following these events, Ray retained Hades to advise him
regarding alternatives to the Ad Hoc Committee's proposed
restructuring that would not include his termination.  (Id. at ¶
15).  Plaintiffs allege that Ray engaged Hades without the
authority or knowledge of Charys's board of directors.  (Id.).
Plaintiffs also allege that Charys already had engaged
AlixPartners, LLP ("AlixPartners") as management advisors in
September, 2007.  (Id. at ¶ 11).

On or about January 28, 2008, Charys wired Hades $100,000
(the "Transfer") in connection with Hades' restructuring
services.  (Id. at ¶ 16).  At the time of the Transfer, Charys
is alleged to have been insolvent because its total liabilities
exceeded its total tangible and intangible assets by at least
$10 million.  (Id. at ¶ 17).

Approximately seventeen days after the Transfer, on
February 14, 2008 (the "Petition Date"), Charys and its

affiliate Crochet & Borel Services, Inc. (together, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code.  Over a year thereafter, on February 24, 2009, the Court entered an Order (the "Confirmation Order") [Docket No. 669] confirming the First Amended Joint Plan of Reorganization of Debtors and Certain Nondebtor Affiliates under Chapter 11 of the Bankruptcy Code, Dated December 8, 2008 (the "Plan").  Pursuant to the Plan and Confirmation Order, the Trusts were created and certain of the Debtors' assets, including avoidance causes of action were transferred to the Trusts.

Thereafter, on February 12, 2010, the Trusts instituted this adversary proceeding by filing the Complaint against Hades. On April 8, 2010, Defendant filed the Motion, seeking to dismiss the Complaint.  The Trusts filed a response in opposition to the Motion (the "Response") [Docket No. 8], attaching thereto an amended version of the Complaint [Docket No. 10].  Defendant then filed a reply (the "Reply") [Docket No. 13].  Defendant also requested that the Court hear oral argument on the Motion [Docket No. 20], which request the Court has declined [Docket No. 24].  This matter has been fully briefed and is ripe for decision.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), and (H).

## STANDARD OF REVIEW

Defendant seeks dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable by Federal Rule of Bankruptcy Procedure 7012, for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion tests the sufficiency of a complaint's factual allegations.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  A court's fundamental inquiry in the Rule 12(b)(6) context is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 814-15 (1982).

To decide a motion to dismiss, a court must "accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff."  Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004); Phillips v. County of

<u>Allegheny</u>, 515 F.3d 224, 231 (3d Cir. 2008).  In addition, all reasonable inferences are drawn in favor of the plaintiff. <u>Kost</u>, 1 F.3d at 183.

Following the Supreme Court's recent rulings on Rule 12(b)(6) in <u>Twombly</u> and <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009), the Third Circuit recognized that reviewing a Rule 12(b)(6) motion requires a two-part analysis.  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009).  First, a court should separate the factual and legal elements of a claim, accepting the facts and disregarding the legal conclusions. <u>Id.</u> at 210-11.  Second, a court should determine whether the remaining well-pled facts sufficiently show that the plaintiff "has a plausible claim for relief." <u>Id.</u> at 211 (internal quotations omitted).  Put another way:

> [S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element.  This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.

<u>Phillips</u>, 515 F.3d at 234 (internal quotations omitted) (citations omitted).  Federal Rule of Civil Procedure 8, applicable here pursuant to Federal Rule of Bankruptcy Procedure 7008, requires that a complaint contain, "a short and plain statement of the claim showing that the pleader is entitled to

relief," to "give the defendant fair notice of what the . . .
claim is and the grounds upon which it rests." <u>Twombly</u>, 550
U.S. at 555 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957).
These standards govern the Motion.[2]

## PARTIES' POSITIONS

### A.   Defendant's Position

Defendant argues that the Complaint should be dismissed
because it fails to sufficiently allege facts supporting either
a preferential transfer or a constructive fraudulent transfer.
On the preference claim, Defendant argues that insufficient
facts are pled to support the allegations that: (i) a transfer
of a specific Debtor's property occurred; (ii) Hades received
such a transfer; (iii) an antecedent debt existed; (iv) Hades

---

[2]   Plaintiffs' constructive fraudulent transfer claims are
likewise governed by Rules 8 and 12(b)(6) and not the heightened
Rule 9(b) pleading standard.  <u>China Resource Prods. (U.S.A.)</u>
<u>Ltd. v. Fayda Int'l, Inc.</u>, 788 F. Supp. 815, 819 (D. Del. 1992)
("Despite the similarity in the terms 'fraud' and 'fraudulent
conveyance,' the pleading requirements for fraud are not
necessarily applicable to pleadings alleging a [constructive]
fraudulent conveyance."); <u>Astropower Liquidating Trust v.</u>
<u>Xantrex Tech., Inc., (In re AstroPower Liquidating Trust)</u>, 335
B.R. 309, 333 (Bankr. D. Del. 2005) ("[A] claim of constructive
fraud need not allege the common variety of deceit,
misrepresentation or fraud in the inducement.") (quoting <u>Global</u>
<u>Link Liquidating Trust v. Avantel, S.S. (In re Global Link</u>
<u>Telecom Corp.)</u>, 327 B.R. 711, 717-18 (Bankr. D. Del. 2005));
<u>Contra</u> <u>OHC Liquidating Trust v. Nucor Corp. (In re Oakwood Homes</u>
<u>Corp.)</u>, 325 B.R. 696, 698 (Bankr. D. Del. 2005) ("Rule 9(b)
applies to adversary proceedings in bankruptcy which include a
claim for relief under §§ 544 or 548, whether it is based upon
actual or constructive fraud.").

was a creditor of the transferor/Debtor; or (v) the transfer
enabled Hades to receive more that it would have under a chapter
7 proceeding.  (Def.'s Br. 1-2, 7-11).

Defendant also argues that Plaintiffs' preference claim is
contradicted by Debtor Charys's publicly filed Schedules of
Assets and Liabilities ("Schedules") [Docket No. 144] because
the Schedules do not identify Hades as a creditor of Charys's
and instead indicate that Hades held a $100,000 retainer from
Charys.  (Def.'s Reply 4).  Defendant contends that the Court
can take judicial notice of the Schedules pursuant to Federal
Rule of Evidence 201 and that the Schedules are unrebutted
conclusive proof that the Transfer was not made on account of an
antecedent debt, as required for a preference claim.  (Id.).

On the fraudulent transfer claims, Defendant argues that
Plaintiffs' allegation that the Transfer was made on account of
an antecedent debt shows that the Transfer was for reasonably
equivalent value and cannot be avoided as fraudulent.  (Id. at
2, 12).  In addition, Defendant argues that the fraudulent
transfer claims suffer from the same insufficient fact-pleading
infirmities that vitiate the preference claim.  (Id. at 2, 12-
13).  Defendant argues that the facts alleged in the Complaint
do not allow the Court to draw reasonable inferences as to what
services Hades provided to which Debtors and how such services
were not reasonably equivalent value for the Transfer.  (Id. at

13).  Additionally absent, argues Defendant, are facts regarding
the Debtors' insolvency.  (Id. at 14).  Defendant also maintains
that Plaintiffs' section 544(b) claim, which incorporates the
laws of three states and two uniform laws, fails to provide fair
notice of the applicable state law.  (Id. at 15).

        Defendant finally argues that the C&B Liquidating Trust has
no interest in the assets of the estate of Debtor Charys,
including avoidance actions, and therefore, the C&B Liquidating
Trust has no right to prosecute Complaint against Hades.
(Def.'s Reply 2-3).  As a result, argues Defendant, the C&B
Liquidating Trust is not entitled to relief on account of the
Transfer.  (Id.).

**B.    Plaintiffs' Position**

        Plaintiffs argue that the Complaint, as amended, adequately
pleads claims for a transfer that was both constructively
fraudulent and preferential.  On the preference claim,
Plaintiffs contend that the Complaint contains necessary details
regarding the Transfer and adequately pleads an antecedent debt
by alleging that after Hades provided some advice to Ray, Charys
made the Transfer.  (Pl.s' Resp. 3-4).  Plaintiffs also argue
that the Complaint contains facts regarding the Debtors'
inability to satisfy their secured debt, which is sufficient to
show that the Transfer enabled Hades, as an unsecured creditor,
to receive more than it would have under chapter 7.  (Id. at 4).

Plaintiffs maintain that although the Transfer cannot be both a preference and a fraudulent transfer, the fraudulent transfer claims are properly pled in the alternative. (Id. at 5). Plaintiffs further argue that they allege sufficient facts to show lack of reasonably equivalent value under a totality of the circumstances analysis due to the timing of the Transfer and AlixPartner's concurrent employment by the Debtors. (Id. at 6). Plaintiffs argue that the Complaint adequately alleges insolvency via the "retrojection rule" which allows the Court to infer insolvency at a middle date that is between earlier and later dates upon which the debtor was known to have been insolvent, absent substantial changes in assets or liabilities. (Id. at 7-8).

Finally, Plaintiffs argue that their section 544(b) claim properly pleads several state and uniform laws in the alternative and that without an assertion by Hades that the laws conflict, the Court need not address choice-of-law issues at this juncture. (Id. at 8). Accordingly, Plaintiffs request that the Court deny the Motion.

## V. DISCUSSION

### A. The Complaint Does Not Adequately Allege Preferential Payment

Section 547 of the Bankruptcy Code provides that, subject to certain statutory exceptions:

the trustee may avoid any transfer of an
interest of the debtor in property—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt
owed by the debtor before such transfer was
made;
(3) made while the debtor was insolvent;
(4) made— (A) on or within 90 days before
the date of the filing of the petition;
    . . .
(5) that enables such creditor to receive
more than such creditor would receive if—
        (A) the case were a case under chapter
        7 of this title;
        (B) the transfer had not been made; and
        (C) such creditor received payment of
        such debt to the extent provided by the
        provisions of this title

11 U.S.C. § 547(b).

On several occasions, courts in this Circuit have found
complaints asserting preferential transfer claims must contain
particularized facts including: (i) an identification of the
nature and amount of each antecedent debt; and (ii) an
identification of each alleged preferential transfer including
date, name of debtor/transferor, name of transferee, and amount
of transfer.  OHC Liquidation Trust v. Credit Suisse First
Boston (In re Oakwood Homes Corp), 340 B.R. 510, 522-23 (Bankr.
D. Del. 2006); Valley Media v. Borders (In re Valley Media), 288
B.R. 189, 192 (Bankr. D. Del. 2003).  Contra Official Comm. of
Unsecured Creditors of The IT Group ex rel. the Estate of The IT
Group, Inc. v. Brandywine Apartments (In re The IT Group, Inc.),
313 B.R. 370, 373 (Bankr. D. Del. 2004) ("while the information

identified by <u>Valley Media</u> might ultimately be necessary to adjudicate the preference claims, it does not follow that it must be pleaded on pain of dismissal.").

Here, the Complaint states that "[o]n or about January 28, 2008, Charys wired $100,000 from its commercial checking account with Branch Banking & Trust Corporation (Account No. XXXXXXXXX) to an account in the name of Hades Advisors, LLC at KeyBank, National Association (Account No. XXXXXXXX)."  (Compl. ¶ 16). The Complaint attaches documentation of the transaction.  The Complaint adequately alleges facts identifying the allegedly preferential transfer by date, transferor/ transferee, and amount.

The Complaint does not, however, provide sufficient facts showing an antecedent debt owed by Charys to Hades.  The Bankruptcy Code does not define "antecedent," but the term is commonly defined as "earlier; preexisting; previous."  <u>Black's Law Dictionary</u>, 101 (8th ed. 2004).  In the context of a preferential transfer under the Bankruptcy Code, the transfer must have been on account of a debt owed to the debtor prior to the transfer.  <u>See Id.</u> at 432 (defining antecedent debt as "[a] debtor's prepetition obligation that existed before a debtor's transfer of an interest in property.").

Contrary to Plaintiffs' representations in their Response, the Complaint does not allege that Hades provided services to

Ray or Charys in advance of the Transfer or that Charys owed any
other preexisting debt to Hades.  Instead, the Complaint states
"[i]n late January 2008 Mr. Ray . . . retained Hades and began
discussions with Hades to advise him . . ."   (Compl. ¶ 15).
The Complaint identifies January 28, 2008 as the date of the
Transfer, but does not specifically allege that services were
rendered prior to this date.  (See Id. at ¶¶ 15, 16).
Plaintiffs' representations in their Response cannot remedy
deficient fact pleading.  Commonwealth of Pa., ex rel. Zimmerman
v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (citing Car
Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir.
1984), cert. denied, 470 U.S. 1054 (1984) ("[I]t is axiomatic
that the complaint may not be amended by the briefs in
opposition to a motion to dismiss.")

     The Complaint contains no facts from which the Court could
infer that the Transfer was made on account of an antecedent
debt.  This factually devoid pleading is precisely what Iqbal
and Twombly instruct this Court to dismiss on a Rule 12(b)(6)
challenge.[3]  Count I will be dismissed without prejudice.

---

[3]     In fact, Charys's Schedules docketed in these cases show a
$100,000 retainer provided to Hades by Charys.  (Case No. 08-
12089 (BLS), Docket No. 113).  By definition, a retainer is a
pre-paid fee to secure later services and not a payment on
account of an antecedent debt.  See Black's Law Dictionary, 1341
(8th ed. 2004) (defining retainer as, "an advance payment of
fees for work that . . . will [be] performed in the future.")
The Court can take judicial notice of public records to resolve

**B.    The Complaint Adequately Alleges Constructive Fraudulent Transfers**

Section 548(a)(1)(B) of the Bankruptcy Code authorizes the avoidance of transfers of interests in the debtor's property occurring within two years prior to the petition date if the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred . . ." 11 U.S.C. § 548(a)(1)(B)(i), (ii)(I).

Section 544, in turn, authorizes avoidance of transfers of an interest of the debtor in property that is voidable by an unsecured creditor under applicable state law. 11 U.S.C. § 544(b)(1).  Here, Plaintiffs have alleged that the Transfer is avoidable under "applicable state law, including, but not limited to, the Georgia Uniform Fraudulent Transfer Act, Ga. Code § 18-7-20 et seq., the Delaware Fraudulent Transfer Act, 6 Del. C. § 1301 et seq., [and] the New York Fraudulent Conveyance

---

a Rule 12(b)(6) motion without converting the motion to one for summary judgment.  Velazquez v. GMAC Mortg. Corp., 605 F. Supp. 2d. 1049, 1057 (C.D. Cal. 2008); Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd., 181 F.3d 410, 426 (3d Cir. 1999); Morrison v. Madison Dearborn Capital Partners III, L.P., 389 F. Supp. 2d 596, 597 n.2 (D. Del. 2005). A debtor's schedules and statements are among the public documents properly subject to judicial notice.  In re Argose, Inc., 377 B.R. 148, 150 (Bankr. D. Del, 2007); In re Reed, 293 B.R. 65, 69 (Bankr. D. Kan. 2003).

Act, N.Y. Debt. and Cred. Law. Art. 10 (§ 270 et seq.) . . . ."[4]

(Compl. ¶ 38).  Plaintiffs have properly pled various state laws

in the alternative and put Defendant on adequate notice of what

claims Plaintiffs are asserting.

Both Delaware and Georgia have adopted the Uniform

Fraudulent Transfer Act ("UFTA"); whereas New York has adopted

the Uniform Fraudulent Conveyance Act ("UFCA").  As a general

matter both UFTA and UFCA, as adopted by these states, allow a

debtor's creditors to recover property when it is transferred by

the debtor without receiving reasonably equivalent value (or

fair consideration) if the debtor is insolvent or becomes

insolvent as a result of the transfer.  The elements of an

avoidable transfer under UFTA or UFCA, as adopted by individual

---

[4]    Section 1305(a) of the Delaware Code and section 18-2-75
(a) of the Georgia Code state in pertinent part: "A transfer
made or obligation incurred by a debtor is fraudulent as to a
creditor whose claim arose before the transfer was made or the
obligation was incurred if the debtor made the transfer or
incurred the obligation without receiving a reasonably
equivalent value in exchange for the transfer or obligation and
the debtor was insolvent at that time or the debtor became
insolvent as a result of the transfer or obligation." 6 Del.
Code Ann. tit. 6, § 1305(a) (2010); Georgia Code Ann. § 18-2-75
(2009).
     Section 274 of New York's Debtor & Creditor Law provides:
"Every conveyance made without fair consideration when a person
making it is engaged or is about to engage in a business
transaction for which the property remaining in his hands after
the conveyance is an unreasonably small capital, is fraudulent
as to creditors and as to other persons who become creditors
during the continuance of such business or transaction without
regard to his actual intent."  N.Y. Debt. & Cred. § 274 (2010).

states, do not substantially vary from the elements set forth in section 548(a)(1)(B).

Thus, to survive a motion to dismiss, Plaintiffs' constructive fraudulent transfer claims predicated on section 548 or 544 must allege sufficient facts that plausibly show (i) a transfer within the applicable time period; (iii) the debtors' insolvency; and (iii) a lack of reasonably equivalent value (or fair consideration).

Here, the Complaint alleges that the Transfer was made within a few weeks prior to the Petition Date. (Compl. ¶ 16). There is no dispute that the Transfer was made within the applicable time period.

The Complaint also sufficiently alleges that the Transfer was made while the Debtors were insolvent. The Complaint states that "[a]s of October 31, 2007, Charys (including its affiliates) had total tangible and intangible assets of $245,000,000 and total liabilities of $255,000,000." (Compl. ¶ 17). In addition, the Complaint alleges that "a significant portion of the intangible assets consisted of goodwill from Charys's acquisitions, which was rendered valueless by a "going concern opinion" issued by Charys's outside accountants in connection with its April 30, 2007 annual report. Charys remained insolvent from October 31, 2007 until it filed the petition for bankruptcy." (Id. at ¶ 17).

Assuming the truth of the above facts, as the Court must on a motion to dismiss, Plaintiff has adequately alleged that the Transfers were made within the statutory period and at a time when the Debtors were insolvent.  See Joseph v. Frank (In re Troll Communications, LLC), 385 B.R. 110, 123-24 (Bankr. D. Del. 2008)(partially denying motion to dismiss and finding insolvency adequately pled where complaint alleged facts showing that debtors' liabilities exceeded their assets as of a year prior to bankruptcy filing and continuing through petition date and where going concern opinion rendered debtors' goodwill valueless).

The Complaint must also, however, adequately allege a lack of reasonably equivalent value.  On this element, the Complaint avers that "Hades could not have provided meaningful services to Charys because, at the time Mr. Ray engaged Hades, Charys' bankruptcy filing was imminent.  Moreover AlixPartners had been engaged by Charys since September 2007 to provide management advice and was already advising Charys regarding a potential restructuring."  (Id. at ¶ 28).

The term "reasonably equivalent value" is not defined in the Bankruptcy Code, however, the Third Circuit has noted that "a party receives reasonably equivalent value for what it gives up if it gets 'roughly the value it gave.'"  VFB LLC v. Campbell Soup Co., 482 F.3d 624, 631 (3d Cir. 2007).  To determine reasonably equivalent value, the Third Circuit requires a

"totality of the circumstances" analysis, taking into account
"the good faith of the parties, the difference between the
amount paid and the market value, and whether the transaction
was at arms length." Peltz v. Hatten, 279 B.R. 710, 736 (D.
Del. 2002) (quoting Mellon Bank, N.A. v. Official Comm. of
Unsecured Creditors of R.M.L., Inc. (In re R.M.L., Inc.), 92
F.3d 139, 148-49 (3d Cir. 1996). This analysis is inherently
fact driven.  See Peltz, 279 B.R. at 736.

Plaintiffs here have alleged that Hades was engaged by Ray
on the eve of the Debtors' bankruptcy filing and that
AlixPartners was already providing restructuring services.
(Compl. ¶¶ 28, 35).  Plaintiffs also allege that Ray engaged
Hades without authority or knowledge of the Debtors' board of
directors.  (Id. at ¶ 15).  Accordingly, Plaintiffs argue, Hades
could not have provided meaningful services to the Debtors.
(Id. at ¶¶ 28, 35).  These allegations focus on Ray's lack of
good faith and the market value of the transaction, and not
Hades' lack of good faith or the arm's length nature of the
transaction.  Plaintiffs allege that based on, inter alia, the
timing of the Transfer, the presence of an already-developed
reorganization process, and the Debtors' concurrent employment
of AlixPartners, Defendant could not have provided $100,000
worth of services.

Although the Complaint is not a model of detailed pleading,
reasonably equivalent value is a fact-intensive determination
that typically requires testing through the discovery process.
Based on the totality of the circumstances as alleged in the
Complaint, the Court could infer that the Debtors did not
receive services commensurate with the $100,000 Transfer.  The
Motion will be denied with respect to Counts II and III.

**C.   The Complaint Adequately States a Claim for Recovery of
Avoided Transfers**

Count IV of the Complaint seeks to recover the Transfer
pursuant Bankruptcy Code section 550(a), that states:

> [e]xcept as otherwise provided in this
> section, to the extent that a transfer is
> avoided under section 544, . . . [or] 548 .
> . . of this title, the trustee may recover,
> for the benefit of the estate, the property
> transferred . . . from – (1) the initial
> transferee of such transfer of the entity
> for whose benefit such transfer was made; or
> (2) any immediate or mediate transferee of
> such initial transferee.

11 U.S.C. § 550(a).  The Complaint alleges that that "[o]n or
about January 28, 2008, Charys wired $100,000 from its
commercial checking account with Branch Banking & Trust Company
(Account No. XXXXXXXX) to an account in the name of [Hades] at
KeyBank, National Association (Account No. XXXXXXXX)." (Compl. ¶
16).  The Complaint attaches documentation of the Transfer.
(See Compl. Ex. A).  The Complaint contains sufficient facts

from which the Court could infer that Defendant was the initial transferee of transfers that are avoidable pursuant to section 544 or 548 of the Bankruptcy Code.  As explained above, the Court will deny the Motion with respect to Plaintiffs' claims under sections 544 and 548 and will likewise deny the Motion with respect to Plaintiffs' section 550 claim.[5]

## VI. CONCLUSION

The Court will grant the Motion with respect to Count I and deny the Motion with respect to Counts II, III, and IV. An appropriate Order follows.

By the Court,

_____
Brendan Linehan Shannon
United States Bankruptcy Judge

Dated:  July 14, 2010

---

[5]     To the extent that the Motion contained other grounds for dismissal, the Court has considered and rejects such arguments.